UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERDANA PAULINE THOMAS,<br>Plaintiff,<br>v.<br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br>Defendant. | NO. EDCV 13-597 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Verdana Pauline Thomas filed this action on April 11, 2013. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 26.) On May 23, 2014, Thomas filed a motion for summary judgment ("MSJ"). (Dkt. No. 23.) On July 30, 2014, the Commissioner filed an opposition and cross-motion for summary judgment ("Opposition"). (Dkt. No. 30.) On August 11, 2014, Thomas filed a reply in support of her motion for summary judgment ("Reply"). (Dkt. No. 31.) The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

<mark>Case 5:13-cv-00597-AGR Document 32 Filed 09/26/14 Page 2 of 19 Page ID #:1438</mark>

# I.

## PROCEDURAL BACKGROUND

On May 12, 2008, Thomas filed an application for disability insurance benefits alleging an onset date of October 22, 2007. Administrative Record ("AR") 245-49. The application was denied initially and on reconsideration. AR 84-85. Thomas requested a hearing before an Administrative Law Judge ("ALJ").[1] AR 109. On January 11, 2012, Thomas appeared at the hearing without an attorney or representative. AR 72-83. The ALJ continued the hearing to give Thomas an opportunity to hire an attorney or representative. AR 82. On March 21, 2012, Thomas appeared with an attorney. The ALJ conducted a hearing at which Thomas and a vocational expert testified. AR 37-71. On April 11, 2012, the ALJ issued a decision denying benefits. AR 15-31. On November 20, 2012, the Appeals Council denied the request for review. AR 4-9. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's

---

[1] On December 1, 2010, an ALJ dismissed the request for hearing as untimely. AR 15, 86-90. Thomas appealed the determination, and on June 10, 2011, the Appeals Council remanded her case for further proceedings. AR 15, 91-94.

1  decision, the court examines the administrative record as a whole, considering
2  adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the
3  evidence is susceptible to more than one rational interpretation, the court must
4  defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Thomas met the insured status requirements through December 31, 2008. AR 17.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ found that Thomas did not engage in substantial gainful activity during the period from her alleged onset date of October 22, 2007 through her date last insured of December 31, 2008. AR 17.

Through the date last insured, Thomas had the severe impairments of left shoulder impingement syndrome, degenerative disc disease of the lumbar spine, degenerative joint disease of the lumbar spine, bilateral carpal tunnel syndrome,

---

[2] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

diabetes mellitus, hypertension, depression and anxiety. She had the residual functional capacity ("RFC") to perform light work, except she could occasionally bend, stoop and climb stairs with an assistive device; could not kneel, crouch, crawl or squat; could not climb ladders, ropes or scaffolds; should have a sit/stand option of approximately 45 minutes to one hour with brief position changes; should not work at unprotected heights, around moving machinery or other hazards; should avoid concentrated exposure to vibrations; could frequently grasp bilaterally but could not repetitively grasp bilaterally; was precluded from overhead reaching or overhead work with the left upper extremity; and was limited to simple and routine tasks due to chronic pain and depression. AR 20. Thomas was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that she could have performed such as parking lot toll collector, ticket taker and electronic worker. AR 29-31.

### C.  Listing 1.04

Thomas contends that the ALJ erred in finding that she did not meet or equal Listing 1.04.

The claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not

just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (citation omitted) (emphasis in original).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphasis in original). "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Listing 1.04 governs musculoskeletal impairments and requires a claimant to show a disorder of the spine such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[ ], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with either: "A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);" "B. Spinal arachnoiditis, confirmed by an operative note or pathology

report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;" or "C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

At Step Three, the ALJ found that Thomas did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 18. The ALJ specifically considered Listings 1.02, 1.04, 4.00, 9.00, 11.00, 12.04 and 12.06. The ALJ noted that no treating or examining physician had recorded findings equivalent in severity to the criteria of any listed impairment. The evidence did not show medical findings that were the same or equivalent to those of any listed impairment.

Thomas contends she met the requirements of Listings 1.04A and 1.04C. She argues that a December 2007 lumbar spine MRI noted disc protrusions encroaching upon the nerve roots, degenerative spondylolisthesis, degenerative disc changes, bilateral neuroforaminal narrowing causing effacement of the nerve roots, and bilateral facet arthrosis with ligament flava hypertrophy. AR 436-40. She argues that her gait was antalgic, her straight leg raising was positive, and she had lumbar tenderness and limited range of motion. AR 349, 470, 702. Radiation to the left hip and leg was noted. AR 473. Motor and sensory loss were noted. AR 619. She was prescribed a walker in June 2008. AR 615.

Thomas does not demonstrate that she met or equaled Listing 1.04A through December 31, 2008. On October 24, 2007, Thomas was found to have normal sensation and reflexes in both legs. AR 24, 702. A treatment note, dated February 1, 2008, indicated Thomas' low back pain had decreased. AR 25, 634. On February 20, 2008, Thomas was found to have negative straight-leg raising

6

test and "motor, sensory, pulses intact." AR 413. Thomas cites an April 28, 2008 progress report noting "↓motor, sensory," yet on March 26, 2008, Thomas was found to have "full motor, sensory, pulses intact." AR 619, 628. In July 2008, a state agency medical consultant noted the lack of evidence of atrophy or muscle weakness of the lower extremities, and determined Thomas did not meet Listing 1.04. AR 523. An orthopedic evaluation, dated August 14, 2008, revealed diffuse tenderness and paravertebral muscular spasm across the lumbar spine from L1 to the sacrum, midline, and over the facet; decreased range of motion; positive facet compression test with extension and rotation; and positive straight leg raising at 80 degrees bilaterally. AR 25, 685. The evaluation does not indicate motor loss accompanied by sensory or reflex loss.

Thomas argues that progress notes indicate motor loss and muscle weakness by indicating difficulty moving from standing to sitting, 4/5 strength in both feet, 3/5 lower extremity weakness bilaterally, L5 nerve root weakness bilaterally, and incontinence and bowel dysfunction. Even assuming evidence of motor loss and muscle weakness, Thomas does not show the required evidence of accompanying sensory or reflex loss over a period of time.[3] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."). Thomas does not show medical evidence that her pain was neuro-anatomic and that the pain in the leg or hip corresponded to a specific compromised nerve root. She argues only that her pain is "reasonably interpreted as neuro-anatomic." Reply at 1-2.

Thomas does not demonstrate that she met or equaled Listing 1.04C through December 31, 2008. An October 28, 2007 x-ray of the lumbar spine showed slight curvature of the upper lumbar spine to the left side and mild

---

[3] The evidence indicates that Thomas' complaints of incontinence and bowel dysfunction began after the date last insured. AR 883, 887, 898, 919.

degenerative changes of the discovertebral joint. AR 24, 709. A December 10, 2007 MRI of the lumbar spine revealed mild spinal canal narrowing, grade I degenerative spondylolisthesis, mild to moderate degenerative disc changes, and hypertrophy. AR 24-25, 437. Thomas has not established a disorder of the spine with lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging. The Commissioner argues that Thomas has not shown chronic nonradicular pain and weakness. Thomas argues the record shows both complaints of nonradicular lower back pain and pain that radiated to the left hip and leg. Thomas' argument is not persuasive.[4]

Thomas argues that even if she did not meet Listing 1.04, she equaled it because of her left shoulder impingement syndrome, bilateral carpal tunnel syndrome, diabetes mellitus, hypertension, depression and anxiety. Thomas offers no theory as to how her impairments combined to equal a listed impairment. *Lewis*, 236 F.3d at 514 (claimant did not satisfy burden to prove that he equaled a listing when he "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment . . . [n]or has he pointed to evidence that shows that his combined impairments equal a listed impairment."). Nor did she make such an argument to the ALJ. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

To the extent Thomas contends a medical expert should have testified on the issue of equivalency, her contention fails. The ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled." Social

---

[4] The court does not address whether Thomas had an inability to ambulate effectively because she did not establish that she could otherwise meet Listing 1.04C.

8

Security Ruling ("SSR") 96-6p.[5] When an ALJ determines that an individual's impairment is not equivalent to any listing, the ALJ may satisfy the duty to receive expert opinion evidence into the record by obtaining the signature of a State medical consultant on an SSA-831-U5, SSA-832-U5 or SSA-833-U5 form, or by "various other documents on which medical and psychological consultants may record their findings." *Id.* Here, the record contains a Physical Residual Functional Capacity Assessment completed by Dr. Bitonte, a State medical consultant, showing that none of Thomas' alleged impairments met or medically equaled a listed impairment, including Listing 1.04. AR 27, 516-23. The requirements of SSR 96-6p have been satisfied.

The ALJ evaluated and discussed the medical evidence in detail and correctly found that Thomas did not meet or equal a listing.[6] AR 18-29. The ALJ did not err.

    **D.**    **Weight of Medical Opinion Evidence**

        1. Treating Physician

Thomas contends the ALJ erred in ignoring the opinion of Dr. Payne, her Qualified Medical Examiner for her workers' compensation claim.

---

[5] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[6] *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."). In *Gonzalez*, the Ninth Circuit found that the ALJ's summary of the medical evidence and the claimant's testimony was sufficient, even though the ALJ did not state what evidence supported the conclusion that the impairments did not meet or equal the listings. *Id.* at 1200-01. "To require the ALJ's to improve their literary skills in this instance would unduly burden the social security disability process." *Id.* at 1201 (citation omitted); *see also Lewis*, 236 F.3d at 513 (ALJ need not discuss and evaluate evidence that supports his or her conclusion under a specific heading).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Dr. Payne began treating Thomas in April 2009 for her orthopedic complaints, at which time he stated she was temporarily totally disabled. AR 660, 671. He declared Thomas permanent and stationary on April 11, 2011 and assessed status post industrial fall with unstable spine, multilevel spinal stenosis at L3-L4, L4-L5 and L5-S1, spondylolisthesis at L4-L5 and neck pain. AR 894. He noted that Thomas was a surgical candidate, except for her morbid fear of surgery. *Id.* He restricted her to semi-sedentary work, which he described as a "permanent disability state." AR 879, 894.

The Commissioner argues that the ALJ did not address Dr. Payne's records because his assessments were irrelevant to the issue of whether Thomas was disabled as of December 31, 2008.

"The decision of an ALJ fails . . . when the ALJ completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1045 (9th Cir. 2007). Even assuming the ALJ erred in not discussing Dr. Payne's

opinion, any error was harmless because his records would not have changed the ALJ's ultimate nondisability determination. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error harmless where it is "inconsequential to the ultimate nondisability determination"). Dr. Payne's records indicate that four months after Thomas' date last insured, there was very little lumbar spine range of motion, but her gait was normal, she had normal lumbar lordosis and equivocal Lasegue's, the spinous processes were non-tender to light and deep palpation in the lumbar spine, there was no sciatic notch or buttock pain to light and deep palpation, there was no obvious asymmetry or atrophy to the spine or lower extremities, and sensation was intact according to the lumbar spine dermatomes to the lower extremities bilaterally. AR 667-68, 670. Dr. Payne's records also document Thomas' continuing refusal to comply with recommended treatment.

### 2. Workers' Compensation Physicians

Thomas contends that the ALJ erred in assigning little weight to the opinions of the workers' compensation physicians.

An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). "Instead, the ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion." *Id.*

The ALJ indicated that she had read and considered the opinions of the workers' compensation physicians indicating that Thomas was "totally incapacitated," could not return to her regular and customary work, could not work, and was to remain off work. AR 27, 390, 394-95, 402, 409-11, 417, 421, 428, 459, 465-66, 472, 474-75, 485, 579, 585, 591, 597, 620, 627. The ALJ distinguished the disability criteria used in workers' compensation law from the

criteria used under the Social Security Act. AR 27. The ALJ noted that an opinion on an issue reserved to the Commissioner was not entitled to controlling weight. *Id.* The ALJ noted that the clinical findings in the record were consistent with a conclusion that Thomas could do work with her RFC. *Id.* The ALJ noted that the workers' compensation physicians examined Thomas solely in the context of a workers' compensation claim, which affected their credibility and the relevance of their opinions. AR 27-28.

Thomas argues that the ALJ's rationale would allow wholesale rejection of the opinions of workers' compensation physicians without considering the content of those opinions.

"[I]t is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation." *Coria v. Heckler*, 750 F.2d 245, 247 (9th Cir. 1984). Because the tests for Social Security disability and workers' compensation are different, "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes." *Id*. "On the other hand, the physicians' findings, *qua* findings, do not necessarily suffer from similar defects." *Id.* at 248 (italics in original). "[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Id*.

The ALJ properly considered the findings and opinions of the workers' compensation physicians. AR 27, 29. The ALJ noted that their findings revealed radiating pain to both legs, tenderness to palpitations, decreased range of motion,

positive straight leg raising, positive deep tendon reflexes, positive Kemps' test, decreased lower extremity motor, and difficulty changing positions from standing to sitting. AR 24, 386, 411, 415, 419, 427, 444, 468, 470, 473, 481, 490-92, 494, 572, 578, 584, 590, 602, 605, 615, 619. She noted that Thomas was treated conservatively with physical therapy, chiropractic treatments, medications and a walker. AR 24. She noted the treatment was somewhat effective because Thomas reported improvement. AR 24, 434, 464. The ALJ did not err.

### 3. State Agency Physicians

Thomas contends the ALJ erred in assigning greater weight to the State Agency medical consultants than to contradicting treating source records.

The State Agency medical consultants all assessed that Thomas could perform a range of light work, with some differences in the degree of specific function-by-function limitations. AR 27, 516-23, 645-46, 674-78.

Although the ALJ did not completely adopt a single assessment as the RFC, she gave "some weight" to the opinions of the State Agency medical consultants. AR 27. "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r of Soc. Sec. Admin.,* 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas*, 278 F.3d at 957. The ALJ found the opinions of the State Agency medical consultants generally consistent in that they all assessed Thomas as able to perform a range of work at the light exertional level. The ALJ also found their opinions reasonable and supported by the record as a whole. The ALJ adopted only the restrictions that were best supported by the objective evidence as a whole and Thomas' testimony. AR 27.

Thomas argues that other evidence in the record was inconsistent with the opinions of the non-treating, non-examining physicians. However, evidence in the record was consistent with the opinions of the State Agency medical consultants that Thomas could perform an array of light work. For example, in December 2007, an MRI of the lumbar spine showed mild spinal canal narrowing and mostly mild degenerative disc changes. AR 24-25, 437. In January 2008, Thomas had a normal EMG of the lower extremities. AR 25, 358, 523. Four months after the date last insured, Thomas had a normal gait, equivocal Lasegue's, and intact sensation. AR 646, 667-68, 670.

Thomas argues it was improper for the ALJ to rely on the opinions of the State Agency medical consultants because they rendered their opinions in July 2008, September 2009, and October 2009, "years before the record was fully developed." MSJ at 9; AR 516-23, 645-46, 674-78. The State Agency medical consultants reviewed the significant objective findings in the record from October 2007 through Dr. Payne's evaluation in April 2009. AR 516-23, 645-46, 674-78. In 2012, Thomas' attorney produced over 600 additional documents from October 2007 through November 2011. AR 683-1302. The majority of the documents are dated long after the date last insured. The documents include an August 2008 report from Dr. Akmakjian, an orthopedic surgeon. AR 684-86. A State Agency medical consultant specifically considered a similar report from Dr. Akmakjian, dated May 15, 2008. AR 490-92, 522. The Kaiser records from 2007 are from Thomas' October 2007 emergency room visit when she fell and a December 2007 emergency room visit for a cough and shortness of breath. AR 952-79. The Kaiser records do not contain any relevant objective findings that would have influenced the opinions of the State Agency medical consultants. The remaining Kaiser records are from 2010-2011. AR 980-1200. The ALJ properly relied on the opinions of the State Agency medical consultants. The ALJ did not err.

### E. RFC Determination

Thomas contends the ALJ's RFC determination was "internally inconsistent or misleading to the point of misinterpretation." Reply at 7.

The RFC determination measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2). The RFC takes into account both exertional limitations and non-exertional limitations. The RFC must contain "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ must also explain how he or she resolved material inconsistencies or ambiguities in the record. *Id*. "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

In pertinent part, the ALJ's RFC determination was that Thomas could perform light work, except she was limited to occasional bending, stooping, and climbing stairs with an assistive device, and she could frequently grasp bilaterally. AR 20.

Thomas argues that the ALJ should have been explicit in the RFC if an assistive device was required only for bending, stooping and climbing of stairs. If an assistive device was not necessary for all standing and walking, she argues the ALJ should have provided clear and convincing reasons for rejecting the use of an assistive device since she has regularly used a walker since 2008. If an assistive device was necessary for all standing and walking, she argues her RFC is inconsistent in allowing for frequent grasping bilaterally because she could not

15

grasp a walker for 3/4 of each day and use her hands for grasping for 1/3 to 2/3 of each day.

This matter is being remanded for clarification of Thomas' credibility, and in particular the issue of an assistive device. The ALJ is free to reconsider the RFC on remand and medical records associated with use of the assistive device.

### F.   Credibility

Thomas contends the ALJ's credibility finding conflicts with the RFC finding.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36. At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks

16

omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Thomas' medically determinable impairments could reasonably be expected to cause the alleged symptoms, and her statements concerning the intensity, persistence and limiting effects of her symptoms were credible. AR 21. The ALJ found Thomas credible despite her finding that Thomas' activities of daily living were not limited to the extent one would expect given her complaints of disabling symptoms and limitations. The ALJ determined that Thomas' alleged symptoms and limitations were consistent with the RFC and did not support a finding of disability. *Id.*

Thomas argues that the ALJ's RFC assessment was inconsistent with the ALJ's finding that her statements concerning the intensity, persistence and limiting effects of her symptoms were credible. She contends that she testified that she had radiating pain down into her legs and swollen feet if she sat for too long; had daily pain at 8/10; could only carry her purse and one additional bag; could stand for about five minutes at one time before she started having pain; could walk only three to five steps at a time before having to pause and take a break; had great difficulty sitting and had to shift positions frequently; did not do any household chores; had an in-home support services attendant; and had numbness and tingling in her hand if she tried to write. AR 53-54, 57-58, 64-65.

The Commissioner counters that the ALJ's credibility finding does not conflict with the RFC finding. The Commissioner argues there is no conflict because the RFC finding relates only to the time period of October 22, 2007 to December 31, 2008, and Thomas did not testify that she had severe limitations during that time period. The Commissioner also argues there is no conflict

because the ALJ expressly found that Thomas' current condition was partially due to her conscious decision not to follow recommended treatment.

The ALJ noted the impairments and resulting limitations Thomas described both during the period at issue and at the hearing. AR 21. The ALJ noted Thomas' allegations of radiating pain from her back to her legs, swollen feet, muscle spasms in her shoulder, and numbness and tingling in her right hand. AR 20. In her July 16, 2008 Function Report, Thomas stated she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, concentrating, using hands, following spoken instructions, and handling stress and changes in routine. AR 21, 275-81. She uses a walker, which was prescribed in May 2008, or a motorized cart. AR 280. Her impairments affect her sleep. AR 21, 275. She spends most of her day in bed, watching television and using the internet on her laptop, although she prepares her own meals, irons clothes for five minutes, attends monthly meetings at a community center and is able to handle money. AR 21, 274-81. All movement and activities increase pain. AR 277, 281. When she walks, she does not walk much past the distance from the handicapped parking area to the door. AR 279. She gets depressed and has anxiety attacks. AR 281. At the hearing, Thomas testified that her care provider from in-home support services does all the housework, but she sometimes picks up her 15-year old great-niece[7] from school, goes grocery shopping, and goes out to eat and shop with her great-niece. AR 21, 49-52. She testified that she typically uses her walker unless she is "just going a short distance from my bed." AR 52. She came to the hearing with a rolling walker with a seat, on which she sat throughout the hearing. AR 21. She stood on several occasions throughout the 47-minute hearing for about one to two minutes. *Id.*

---

[7] At the hearing, Thomas described the 15-year old as her daughter. AR 49.

18

While the ALJ expressly found Thomas credible, the RFC does not appear to include all of the limitations she described. For example, the RFC includes no provision for use of an assistive device, except when Thomas occasionally bends, stoops or climbs stairs. AR 20. Even assuming Thomas' testimony at the hearing does not concern the limitations she experienced from the October 22, 2007 to December 31, 2008 time period, the July 2008 Function Report does. If the ALJ rejected some of Thomas' subjective complaints, she must give clear and convincing reasons for doing so.

Remand is appropriate for clarification regarding Thomas' credibility.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 26, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge